Donald J. Trump v. Cyrus R. Vance, et al. Before I do that, let me just read into the... You can stand there. Just let me, if I could, read as a matter of housekeeping, for all concerned, just to read into the record that the agreement that I understand, that we understand, is now in place. And I'm quoting from the joint letter, which says, Appellee Vance agrees to forbear enforcement of the Mazars subpoena between the date of oral argument in this matter, October 23, 2019, and 10 calendar days after this court issues its panel opinion, the forbearance period, on the following conditions. One, any petition for certiorari in this matter will be filed in the Supreme Court within the forbearance period. Any opposition will be filed within seven calendar days from the petition. And any reply will be filed within three calendar days from any opposition. Should any filing date specified above fall on a weekend or holiday, the terms of the Federal Rules of Appellant Procedure 26 shall control. Two, should appellant petition for certiorari, appellant will request in his petition that the Supreme Court hear the case in the current term, and appellee Vance will further forbear enforcement of the Mazars subpoena until the Supreme Court either denies certiorari or issues an opinion, whichever is sooner. And third, appellant will immediately withdraw all pending motions for a stay in this court. So that, I understand, to be your joint understanding. That is correct, Your Honor. Thank you. You may proceed. Thank you. Thank you, Your Honor. May it please the Court. This appeal presents two fundamental issues. First, whether the district court should have exercised jurisdiction, or whether it should have abstained as it did. And second, if the district court should have exercised jurisdiction, whether it should have invalidated the subpoena under the doctrine of temporary presidential immunity. We believe, for the reasons set forth in our papers, that the district court erred as to both questions, and that the court should enter judgment for the president on the present record. Could I ask you just, as a factual matter, to walk us through a few things as you get to that point? And both sides will have all the time that you need to make your points. As I understand your complaint, you allege that you began producing documents to the DA's office in response to the Trump Organization subpoena until you learned that it purported to cover the president's tax returns. And as your adversary informs us, in their brief, the Trump Organization has made four productions, and that includes two after the lawsuit was filed. Are you objecting now to the entirety of the Mazar subpoena, or is your objection limited to the tax returns? Thank you, Your Honor. We are objecting to the entirety of the subpoena. We view the entire subpoena as an inappropriate fishing expedition, not made in good faith. And while the president has declined to assert immunities, he might otherwise have the authority to invoke with respect to other subpoenas. If you refer to the doctrine of temporary presidential immunity, why would that pick up the organizations? So the immunity extends certainly to the president, in our view. Absolutely, you say? Absolutely, yes. Which is different from the — seems to be somewhat different from the Department of Justice's view as to immunity. I'm sorry, as to? As to presidential immunity. I don't think there's a real daylight between our position and the Department of Justice. With respect to the — I'll certainly answer both questions in order, if the Court allows. With respect to why it would extend to the organizations, the organizations here are being targeted not just with respect to them, but with respect to the president's personal information to which they have possession. And so there has to be an anti-circumvention rule around these kinds of immunities, otherwise they don't work. You could imagine a multitude of scenarios in which the true target of the subpoena, just like with the Mazar subpoena, is the personal records of the president being held by an — You're ignoring the corporate form. I mean, these are entities that have — clearly have an existence. They operate. They conduct business. That is true. They are also wholly owned by the president, and they do — they do hold his personal records, and his personal records are being sorted out. Now, I think, Your Honor, this raises a broader question, which is there are things that the district attorney could have said that could have made this case somewhat different. And I think your question, to some degree, although not entirely, raises some of those issues. But the district attorney has declined to do so. He has declined to say the president is not a target of the subpoena. He has declined to say that they are not investigating the president through these efforts. And so I think that is the record on which this case arrives at the court. With respect to the — Is it your position that the other persons who are being — who may be involved in this can't be investigated at all, as long as their conduct also implicates the president? Not necessarily. And, of course, we are operating in a handicap position. We have not seen the redacted portions of the declaration, so we can't — we can only speculate as to who they may be and what the relationship might be to the president. But, Your Honor, the issue here is not who is being investigated beyond the president. The issue is the issuance of criminal process to the president. Let me ask you about the temporary absolute immunity of the president. It seems as in a criminal case, the consensus seems to be, yes, there is some criminal prosecution of the president, OLC memos, the board brief, the decisions. But does it apply — it doesn't — they all seem to say it applies once you get to the point of indictment, not before that. Otherwise, United States v. Nixon would be a problem. And just a subpoena was permitted in that case. How is that different from this case, where it's just a grand jury subpoena, not even a trial subpoena, like in the Nixon tapes case? So we — I definitely agree with Your Honor that there is a consensus around the core idea of immunity with respect to — I think it — I think the consensus reaches back to at least indictment. I think certainly the story opinion that's quoted in Fitzgerald says arrest, you know, prosecution, so forth. Beyond that, I think the Bork brief supports the broader view, among the — among other sources. The Bork brief, remember, that was the Agnew grand jury investigation. And in the course of that brief, of course, Robert Bork explained why the Vice President did not have this kind of immunity. But — and he offered reasons why that would be. It would interfere with the grand jury's work. This is important work. And he — but at the end of the opinion, he says that is not true with respect to the President. And that was a grand jury investigation and a grand jury subpoena. So I think at a minimum — What about — what about the Moss — the Moss memo? I think the Moss memo — There are things that can be gathered while the President is still President, even if that — the President cannot be indicted while in office. The answer is yes. But I think the Moss brief does not suggest that those things could be gathered from the President. So we're not asking — The United States versus Nixon. Those were the tapes that were gathered from the President. And the United States Supreme Court said in a unanimous opinion, yes, they're to be disclosed, even with an executive privilege argument. But there was no — there was no — there's no application of absolute presidential immunity to pre-indictment subpoenas in that case. So, Your Honor, first, the President was a third party there, not the subject, and at least on our complaint. And we remain at the motion-to-dismiss stage. We have plausibly alleged — But just like everybody knew in those days that the ultimate target was going to be the President, everybody seems to believe here that the ultimate target may be President Trump. We don't know that, but there are certainly walks and talks that way. As I think, as in many things, there may have been a popular understanding of what was going on in Nixon, but the Supreme Court was not going to allow its judicial decision to be driven by popular understanding. In fact, it was careful when it dismissed the cross petition as improvidently to preserve the question. And I don't think any opinion since then resolves it. Second, there was no claim like this invoked in Nixon. This doctrine has developed since then in Nixon v. Fitzgerald and cases like that. The President claimed an unqualified — Do you think that Jim St. Clair just overlooked this, that there might be some kind of immunity that applies to that subpoena, that trial subpoena in the Nixon case? I can't speak to — do I think it was overlooked? Maybe not. Again, the President, in other cases here, has not invoked it. Every President, I think, will have to make his own determination about when to invoke these kinds of immunities, and President Nixon chose to in that case not to invoke it. The President here has, as in other cases. It's been invoked in Nixon v. Fitzgerald, for example. So third, that was a trial subpoena, and the Court was clear that there was an even more pressing need for it to be — for the President to disclose these communications because there were Sixth Amendment rights at issue. And that's true of the Burr case as well. I think that's been overlooked in the briefing, that the rights of the defendants were at stake in those cases as well, not just — It was a special prosecutor's subpoena. I mean, they do talk about the due process rights and other rights of the defendants in that case, but it was the special prosecutor's subpoena for the tapes. It wasn't the defendants. I completely agree. I just mean in the opinions, particularly in the Burr opinion, and then as quoted in the Nixon opinion, part of the Court's reasoning was that there are both parties that need access to the trial — to the testimony for the trial. But last, Your Honor, even if this Court thinks that Nixon applies on all fours, and we do not, and this goes back to your original question, Chief Justice Katsman, about the Department of Justice, at a minimum, the subpoena would have to meet the Nixon standard. And on the record before this Court, it is difficult to see how — and I haven't seen the one page of redacted material, so — and perhaps the Court has, but it's difficult to see how a subpoena asking for almost a decade's worth of financial reports relates specifically and in a targeted fashion that is appropriately deferential. That's a different issue, though, right, whether it's too broad. I mean, that's something that can be addressed. But your position, as you said a moment ago, is that the immunity is absolute? Yeah. And so if the President were to commit a crime, no matter how heinous, whether he did it before he took office or whether he took it — he did it after he took office, he could not be the subject of any even investigation? That's the position? Yes, until — of course, Congress retains the impeachment power. And on the other side of impeachment, as the text of the Constitution makes clear, the President, like all other citizens, is subject to the laws and jurisdiction of States and the Federal Government alike. The question before the Court is — What is — I mean, the premise is that this is a distraction. It distracts the President from carrying out his duties. Where is the distraction if the subpoena is served on accountants? The President doesn't have to do anything to comply with the subpoena. So two answers. One is, on a doctrinal level, the question is not about this subpoena. It's about what would happen if all 50 States were unleashed to engage in any kind of investigations, criminal investigations of a sitting President. I think it is difficult to sustain the proposition, and I think this point was made in Clinton v. Jones, even in the civil area where the Court was hesitant about allowing States, the idea that this would not lead to a proliferation of investigations of the President that go beyond one third-party subpoena to his accountants. That was one of the arguments in the Clinton v. Jones case, that there would be a flood of civil suits, and that did not happen, right? History will judge whether that prediction was correct or not. I'm not here to dispute it. I accept the decision as it is. I think this Court, though, has to make a different judgment. This is a different category. How is that different from Federal grand jury subpoenas, though? There's 93 U.S. attorneys. There's a lot of State district attorneys and States attorneys, but there's a lot of U.S. attorneys, too. Why is that any different when it's a State grand jury subpoena? Because the Attorney General exercises control at the end of the day over all of them, and so you have a centralized system. That may not always be true. Again, some of the practical realities I think cut both ways here. I think, Your Honor, yes, that may be true, but also I think the Court can't ignore the practical reality of the political considerations that would necessarily infiltrate unleashing States to engage in this kind of broad-ranging investigation of a sitting President. Why can't we think about this case in a narrow sense? That is to say that we are not confronted, we don't have to confront the question of whether the President is immune from indictment and prosecution while in office. We don't have to consider whether the President may lawfully be ordered to produce documents for use in a State criminal proceeding. The only question, arguably, that is before us is whether a State may lawfully demand production by a third party of the President's personal financial records for use in a grand jury investigation while the President is in office. So, Your Honor, on the third-party issue, which I think is the most distinguishing feature from what I think is the paradigm case, the Eastlanders' decision from the Supreme Court makes clear that when you seek records from a custodian, you cannot simply pretend that those are not a subpoena ultimately directed to the party who entrusted the custodian with those records. That would allow for an enormous loophole around the rights of individuals not — and Chief Justice Katzman, not just in this case. That would create an enormous loophole for all people who entrust their records to custodians who want to invoke their Fourth Amendment rights or other rights or other privileges like attorney-client privilege, spousal privilege. This is the law of privilege we're talking about here and the law of third-party custodians, not the law of Presidents. Why couldn't you invoke that in a State motion to quash proceeding? Here, that happens a lot where it's the lawyer's records, the accountant's records, the psychiatrist's records, and the potential defendant tries to quash those because of a privilege. Why can't you do that here? Well, here, there's a dispute between the parties about whether that's even available as a third party under New York law, but we're not pressing that issue here because ultimately the President's brought a 1983 claim. There was no exhaustion requirement in 1983, and the question before the Court is not whether the President should have chosen a State forum, but whether he was entitled to invoke this one, and we think the law is rather clear that a dispute between the Federal Government, or here the President of the United States, and the State over where the President has immunity from State process is not a case in which the Federal Court would exercise its equitable power to abstain and not here a case in which it otherwise has a clear jurisdiction over the dispute. What is your response to the view that a President could basically insulate himself from any State court proceedings by invoking Section 1983 to get into the Federal Court? I think anyone, not just the President, under the Mitchum decision can invoke 1983, any individual, and be heard in Federal Court. They may not have a winning claim in Federal Court. It may be dismissed, but I don't think the Court has been clear both with two respects. One, there is no exhaustion requirement under 1983. That is completely clear. And second, equally clear under Mitchum that the Anti-Injunction Act and hence Younger do not require individuals to bring their 1983 claims. So, again, this is not a President's. What is the 1983 claim? It's the immunity claim. The President's rights are being violated by the District Attorney's Office? The President's immunity is being breached, yes. Well, immunity is usually asserted as a defense. I'm trying to understand what the cause of action is. What is the 1983 cause of action? 1983 by its text refers to immunities held by law. So it's a clear textual basis under the statute. Moreover, the Supreme Court has made clear that these kinds of immunities are available under 1983. It's a right held under the Constitution, no different than someone's right against a dormant commerce clause claim against the State. The credit clause has been a basis. All of these are rights held under 1983. The Supreme Court, in the Dennis opinion, I think was, you know, pretty clear that it's not going to pick and choose among constitutional rights to say this one is good enough to be brought through 1983 and this one is somehow not sufficiently important and you must be kicked out of federal court. Let me just ask you, how would your argument be different if this were a subpoena from a grand jury in the Southern District of New York in Manhattan, a federal grand jury for pursuing a tax investigation? How would your argument be different to stop that subpoena? I think there would be some subtle differences. I think in the overarching view it would not be entirely different. Of course, the President himself has not invoked, with respect to federal processes, immunities because, and this is not a direct answer, Your Honor, but because he believed those investigations were handled appropriately, properly, with sensitivity to the office. This subpoena, which is a photocopy of a congressional subpoena on mostly unrelated – I see my time has expired. No, please continue. Thank you, Your Honor. It is different. Now, on the doctrinal point, Your Honor, I think this issue about the control over the U.S. attorney, I think an argument could be made. You know, it's not applicable here. I think it's a different case because you might say, I don't expect there to be the proliferation of litigation that we think is attendant to a state subpoena, and there's obviously more of a history of special prosecutors and things like that. I think it's a harder case. I think ultimately I think there are good arguments for immunity there as well, but we've never had to cross that bridge. Could you explain to me a little bit more about what is the irreparable harm that your client would suffer if financial and tax documents were disclosed to the DA and to the grand jury? As I understand it, state and federal tax authorities already have at least some of these records. So how would disclosure to another state authority cause additional harm? First, any breach of immunity creates a cognizable harm. The U.S. brief, I think, makes this point quite well. So we are aware of no immunity case where the court says, well, your immunity has been breached, but it's not an irreparable harm. That's the essence of an immunity, no more than having to partake in a double jeopardy situation. Second, I think the average citizen would think that we could be asked the same question. If your tax records have been disclosed to the IRS, why not just turn them over to a grand jury? I think there are quite obvious reasons why any citizen does not want their information exposed to a grand jury if they have a lawful right to not allow that to happen. Third, the law here around this area, and this is unique to the President, is changing rapidly. As we noted in our brief, there have been unique changes to New York law that have taken what was once protected information and seemingly made it less protected or not protected at all. And lastly, it is unclear what would happen at the end of the investigation. I don't know the answer to this question under New York law, but if an indictment were issued as to someone else, this information could be then publicly exposed, I presume.  I don't think there's a guarantee that the President's personal financial information would not be exposed. So I think collectively, all of those provide ample basis for irreparable injury. But, Your Honor, I don't think unless the court is going to remand to the district court, it's not clear to me those issues are necessarily alive anymore given the agreement between the parties. Just so that I'm just want to nail this down, the district court says that it's uncontested that the district attorney is investigating conduct that occurred in New York State. Do you contest that the district attorney and the grand jury are investigating conduct that falls within their enforcement jurisdiction? I have not conceded it. I don't see it as material. Do you contest it? I'm prepared to stipulate to it without conceding to it for purposes of adjudicating this dispute, because I don't think it's material to whether they have the right to seek these documents. Whether they have a basis in State law to secure the documents doesn't answer whether they have a basis in Federal law to secure these documents. Thank you. Thank you, Your Honor. Morning, Your Honors. May it please the Court. I'm Kerry Dunn, and I'm joined by my colleagues today, Chris Conroy, Solomon Shinerock, and Alan Vicki, and together we represent the appellee, the district attorney of New York County. Your Honors, I'd like to pick up where I think the Court started this morning, and that is, to put it bluntly, the appellant's claims all do come down to his tax returns, I believe. We wouldn't be here if we had ignored the obvious conclusion that those returns are relevant to what our grand jury is looking at. The appellant's counsel told us flatly that he would never, ever agree to produce the tax returns. So we decided, given our obligation to look at all the facts, that we would not forbear for several reasons, and these reasons really do all get to Your Honor's question about irreparable harm. First, obviously, there's no such thing as a presidential immunity for tax returns. This isn't about executive communications concerning matters of State or diplomacy, which was the concern central to the U.S. v. Nixon and the Sirica case. Isn't the, as I take it, that a concern of your adversary is not just with respect to the tax returns, but that the subpoena copies the congressional subpoena, which relates to things like the Washington, D.C. hotel that are where there is at least some question about what its relationship would be to the New York investigation? If I could address two things embedded in that, Your Honor. The first is this repeated complaint that it was a photocopied subpoena, and I think this was addressed on the record in the district court, but just so it's clear. And I believe this actually is really all that their claim of harm or bad faith now comes down to. As was explained to the district court, and as the district court found, the simple reason for relying on the text of the earlier subpoena from the House to the accounting firm, and this is not unusual in our practice, is having learned from public sources that there was such a subpoena, we decided to use the same language and text of that presumably, and to limit their ability, if they wanted to, to object to our subpoena on the basis of its being harassing or burdensome or something like that. Secondly, with respect to the question of whether within that subpoena, yes, there is a mention of a hotel in D.C., for example, but, Your Honors, as you all know, an office like ours, even though it's based in New York, is commonly investigating transactions that have tentacles and impacts all over the country, and sometimes extraterritorially, as long as there is a basis to allege that there is a grounds for jurisdiction on the island of Manhattan, in our case. And in many, many cases, as you all know, that often happens by virtue of the where the transactions were centered, where the financial monies were exchanged, et cetera, and obviously it goes without saying that the headquarters of the repellent businesses throughout are here in Manhattan. So I don't think it should be a surprise that our subpoena happened to mention transactions that involved properties or other things of value outside of the island of Manhattan. Does your office commit to preserving the confidentiality of any and all responsive documents? Yes, we do, Your Honor. We're obviously bound to do so by law under our criminal procedure law. So if Congress says we want to see something? We would not be at liberty to provide that to Congress, Your Honor. And that's, again, central to the question of irreparable harm. And as Your Honor already pointed out, you know, the other bodies, governmental bodies that have received these tax returns in the first place already have their own secrecy obligations. But again, to take it further. The argument is that, one of the arguments is that at the end of the day, the documents may be publicly disclosed and therefore the harm. Well, first, I think the short answer to that, Your Honor, is that there is no privilege for tax returns, whether it's the President or anybody else in the country. Yes, he may view them as embarrassing or sensitive. But, yes, tax returns do, in fact, get subpoenaed all the time in financial investigations. And sometimes, perhaps at trial, for example, that leads them to, at least in part, be made public or be made as exhibits in court. I just don't understand where this centrality of the secrecy of tax returns comes from at that point. Yes, we are obliged to abide by grand jury secrecy. Yes, the Federal and State tax authorities have their own obligations to keep it, to not turn those things over publicly. But an accounting firm does not have a valid privilege to interpose when it's subpoenaed, as has happened here, for somebody's tax returns. I just don't know. They're making this up, Your Honor. That's all I can say. Thank you. Kennedy. I ask you about absolute immunity of the President from a criminal trial while he's in office, he or she's in office. Do you agree that there is some absolute immunity of the President from a criminal trial while he or she is in office? Obviously, Your Honor, that's not the case before us. And obviously, that issue has never been decided by any court that I'm aware of. There are the OLC memos which opine on that. There's a lot of dispute as to the analysis in those memos and the effect of those, et cetera. So it's hard for me to say that there could be no circumstance under which a President could ever imaginably be criminally charged or perhaps tried. I understand the sensitivity and how it would be very disruptive, particularly if it's a state rather than a federal charge. Let's assume for the moment there is some absolute immunity of the President from indictment and criminal trial while he is sitting as the President. And let's assume for the moment that that does not extend before that in the proceedings to like a subpoena like in the United States v. Nixon case, right? So let's assume for the moment we say, okay, you can have this subpoena complied with because it's not at the stage yet where that absolute immunity kicks in of the President, right? Well, how are we going to know? What do you do? What are the mechanics of that? Say you say you get response to the subpoena and you see something that looks indictable. Do you then notify people we're going to seek an indictment next Wednesday against the President? And if you want to file a new 1983 case or something else, you better do it now because there's going to be an indictment issuing next Wednesday, we think, if the grand jury agrees with us. Understood, Your Honor. I think the very practical answer to that question, Your Honor, and I completely agree that's our position, is that it is basically unripe at this point, given the rulings in Nixon and Sirica and their progeny, that there is simply no basis to object at this point, whether there's an immunity or not. The way it would work as a practical matter in a case such as ours or any, and it happens all the time, is that in a long-running grand jury investigation, it is almost unheard of, and I would imagine it would happen here, for the parties, the lawyers who are representing parties who have been looked at in the grand jury investigation to serve what's called cross-grand jury notice under our state procedural laws. What that does is immediately obligates an office like ours to provide notice to the defense whenever we get to a point in an investigation where we are contemplating putting charges and reading charges to a grand jury for consideration of a possible indictment. What that does, and what it would do here is two things. It would, A, give the putative defendant, as it always does, the right to decide to actually testify before the grand jury. But number two, in this case, to answer your question, it would put them on notice that, yes, now the time is ripe if they want to interpose a claimed immunity from indictment based upon something in the Constitution they could do at that time. Roberts. Let me press you a bit. Would abstention still be appropriate if the President, if you indicted the President and he sued in Federal court to enjoin that prosecution? I think it would, Your Honor. I think it would be the same position that we take right here, is that in the first instance at least, this is an issue. First of all, we would dispute that there is a blanket absolutist immunity that I would argue instead that under the Nixon and Circa line of cases, it has to be a balancing test in looking at the factors and the circumstances. But yet again, we would be saying the State courts, under our principles of federalism, are not only required to, but perfectly well capable of adjudicating in the first instance at least, a constitutional claim like that. But is the presidency somehow different? I think the argument in part would be that the President is challenging the constitutionality of having him have to submit to State prosecution and that this should be something that is resolved in a Federal forum. That the concerns of younger abstention in part are concerns about comity. But comity washes away when there is already an inherent conflict between Federal and State authority. I agree, Your Honor. I don't want to sound insensitive to the concerns surrounding the office of the presidency. But I think the difference here would be if the conduct underlying that was giving rise to a potential criminal charge was conduct related to the President's official duties or acts in office, that I think would raise a supremacy clause issue and it would be something that would, in the balance of factors looked at. But the President is raising a supremacy clause issue even under the current factors. Yes, but he's. Shouldn't those questions be resolved by a Federal court? Your Honor, he's inventing it as a supremacy clause issue by saying that he is bringing this action as. Whether he's inventing it or not, isn't that a matter for the Federal court to decide? At bottom, Your Honor, I believe this is an action brought in his personal capacity based upon private conduct. And he's not allowed to simply turn this into an act of the sovereign by saying I am the sovereign and the sovereign is me. As long as what we're talking about is private personal conduct, business transactions entered into largely before he was even in office, I think that belongs in the first instance in State court under Younger. Let me. So under Younger, let me press you again. Are there any circumstances that you can envision in which a President could get into Federal court when there is an ongoing criminal proceeding? Yes. As I just said, Your Honor. I just want you to talk a bit more about that. If what was being investigated and looked at was in fact his conduct qua President in his official duties, some sort of official wrongdoing, I think that might under Younger amount to an extraordinary circumstance that would justify having a Federal court keep the case given the Federal interests involved. But, of course, that's just not the case here. He's bringing this action as a private citizen, which in fact what the DOJ brief actually says. They do not, they say affirmatively that he's not bringing this in his official capacity on behalf of the U.S. government, which is frankly why he has private lawyers representing him in this. Notwithstanding, in his principal brief, he does maintain that he's bringing this case both as a private person and as the sovereign, which I just don't think can be the case, Your Honor. And I will point out finally that, you know, all this concern about staying in State court under Younger, not only is there the Federalism concern and the obligation of State courts to hear constitutional claims, but also don't forget, of course, that at the end of the day, if the appellant doesn't get the relief he seeks in the courts in the State itself, they can go to the Supreme Court. That's the backstop under Younger. Roberts. I wanted to ask about the text of the Supremacy Clause. I mean, it can be, the use of the word convicted does imply arguably that you can't bring criminal proceedings until after the impeachment process has played out. And there's a conviction. And what's your response to that argument? Your Honor, I understand the language and the implication of that. Again, we're not, that's not here. We're here, don't forget, on the question of the subpoena, which was long settled, I think, beginning in 1807 by the Burr case. But so that, again, implicates the sort of OLC memo question to whether hypothetically there could be a charge brought against the President while in office. I think people could argue about the implications of that language versus other provisions. You know, I just, again, hypothetically, if we want to entertain that kind of thing, you know, you can invent scenarios where you can imagine that it would be necessary or at least perhaps a good idea for a sitting President to be subject to a criminal charge even by a State while in office. If he, for example, did pull out a handgun and shoot someone on Fifth Avenue, well, I mean, what would be the impact of that? Would local police be disabled from restraining such a person or from processing such a person? Would, you know, would we have to wait for an impeachment proceeding to be initiated? So I don't think, certainly the OLC memos don't answer all the questions. And I'm not sure the Texas Supremacy Clause is the way to answer these questions either. Roberts. Now, in the Department of Justice's brief, there seems to be differences between the Department of Justice's position and Mr. Trump's lawyer's position. Could you speak to that? Well, one of them I just mentioned, which is that they seem to maintain, well, they say flatly that he is not bringing this in his official capacity representing the United States. And I think that's a flat contradiction of the position that the appellant takes in terms of in what capacity he's, you know, again, he's trying to assert that he's bringing this as the sovereign, which then drags with it all of the sovereignty principles that don't belong in a private litigation. And the other thing that's different in the DOJ brief, Your Honor, is that they actually contemplate that the President in this position needs to respond to the question that we're asking of him.  And the DOJ is not one of those places where they should be complied with. They posit that there should be this test of particularized need undertaken, which I think is a red herring, frankly. But what that means, Your Honor, is that the do. Speak to that. Why is it a red herring and how do you assess heightened and particularized  need? If I could just finish the thought and then I'll address that. I mean, what it means when they say, well, yes, he has to respond by producing documents as long as some test is met. That means that he's not immune from investigation in the first place, that he has to comply. That's a fundamental contradiction to the absolutist immunity point that is being advocated here. And so we have not only the Nixon long line of cases standing against him, but the DOJ itself is not supporting their position. With respect to the new suggestion from DOJ that there should be a particularized need test overseen by a court, I believe that what they're looking at there is the language in, again, in Nixon and Sirica. In both of those cases, there were two issues presented to the court. The first was whether the sitting president is subject to subpoena process. And the answer was a quick yes on both cases. We say at this point, that ends it for us. That's the question before this Court. Secondly, though, in those cases, don't forget that the tapes at issue were tape recordings of the President's communications in the Oval Office with his top advisers over a long period of time, which, of course, then raised the question of executive privilege. And the question is whether there are, you know, sensitive matters of State or diplomacy or national security discussed. And that raised the need to make sure that those tapes got reviewed by a court, like a privilege review, attorney-client privilege, by analogy, to make sure that those kinds of important, you know, State-privileged materials were segregated out from the materials that needed to be produced responsive to the subpoena. Here, we have none of that. This is all private business transaction documents and tax returns. Nobody has to see whether there are matters of State interest or national security that need to be protected. There's no privilege that applies whatsoever. It's one big ball of wax, and it's all or nothing. We should get these materials and we can look at it. They are confidential in our hands. And there's no need for to have a magistrate or someone trying to oversee the production. And I don't know what standard by which people would be trying to weed out things that are producible or not. It's not that kind of analysis, Your Honor. Now, if we were to disagree with your view as to whether this case should go to a federal forum, that is, that the particular issue should go to a federal forum, that is, that younger abstention does not apply, I take it ultimately your view is that you could still prevail along the lines of some version of the alternative ruling of Judge Marrero. Yes, Your Honor. In fact, our request here, just so there's no confusion, is that this Court affirmed Judge Marrero on both grounds. We think that it's in the public interest to have rulings both on the younger immunity question or abstention question as well as on the grounds for denying the injunctive  So, yes, if younger were not to prevail, if abstention were not to happen here, we obviously would ask this Court to affirm the district court on the basis of the injunctive analysis, both on the irreparable harm test, which I've touched on briefly, but mostly importantly because of the lack of success or likelihood of success on the merits. But would the district court then have continuing supervision of the case? In other words, would we agree it was properly dismissed or would we say you shouldn't where these important Federal issues need to be resolved by a Federal judge? Your Honor, as I look at it, standing here at least, I think everything has been fully briefed and aired, and the district court certainly did not rule on this simply as a matter of a preliminary injunction. He ordered, you know, full merits-based injunctive relief. I think if this Court upheld that decision that, you know, there may be a trip to the district court has to look at anything going forward. Was it a permanent injunction or a preliminary? He dismissed the complaint. He dismissed the complaint and I believe had at least the effect of entering a merits decision on the permanent injunction. I don't think the district court contemplated that there was going to be any further proceedings in the district court, Your Honor. What about the next subpoena? Which subpoena, Your Honor? The one you're probably thinking about right now. Well, no. Your Honor. So do they file another in 1983 action for the next subpoena to some other institutions? Not if this Court rules in favor of the district court, affirms the district court opinion, Your Honor. I think that would be binding precedent. And indeed, just to be clear, and the district court inquired about this as well, you know, we are hamstrung significantly by the lack of the documents that we're seeking here, but our investigation is indeed proceeding. There are, in fact, other subpoenas outstanding. No one should be surprised by that. It's just that we don't think that we should have our hands tied by not being allowed, as we would in any other ordinary case, to get some of the basic business documents that would shed light on whether there was criminality or not. I see my red light is on, Your Honor. This case seems bound for the Supreme Court. I think both parties see that as an inevitability, Your Honor. Thank you. No further questions. Thank you. Mr. Consovoy. Thank you, Your Honor. I think it's important to frame where we are and where my friend's position is, which is lockstep with the district court. There is no immunity for unofficial action of any kind. The President can be indicted and arrested and convicted by a State while he's in office. They have not ruled out the President as a target of this investigation, which would be the basis for shifting the ground from the immunity doctrines of Nixon v. Fitzgerald and Clinton v. Jones to the third-party doctrines of Nixon v. United States. In fact, everything that we've heard this morning makes clear the President is a target. So I don't think that's really an issue in dispute anymore. It's clear that the district attorney just wants the President's tax returns. We are objecting to the entirety of the subpoena. It is the entire subpoena, this entire fishing expedition that is improper here. There is no argument. And my friend, and I give him credit, has tried mightily to explain why. Is it your view that they're not seeking the tax returns for a legitimate investigatory purpose and they are doing this just to try to embarrass the President? I mean, is that the argument? We believe there is evidence of that, yes. And certainly in their brief, when pushed on this point, the response we got was impeachment isn't going the way we want. The President said he was going to disclose them during the election and he hasn't. Other Presidents have. These are arguments that sound in a policy disagreement with the President, not in the basis of an investigation. The position is that district attorneys from all around the country, U.S. attorneys from all around the country are going to act in bad faith? That's the concern? I think there's an incentive. I would not say everyone is going to act in bad faith. Even in Clinton v. Jones, when the Court said this case is going to proceed, but it's important that we're explaining that it's a Federal court, the Court said local pressures may apply differently in a State forum than they do in a Federal. The Court may agree or disagree, but that was the unanimous judgment of the Supreme Court in Clinton v. Jones, and I think it has to be. And what's your view on the Fifth Avenue example? Local authorities couldn't investigate? They couldn't do anything about it? I think once a President is removed from office, any local authority. This is not a permanent immunity. Well, I'm talking about while in office. No. That's the hypo. Nothing could be done. That's your position? That is correct. That is correct. So even gathering documents that could be used later once the President leaves office, that can't be done either? That can't be done. I apologize. I meant to say with respect to the President directly or through his custodians. This grand jury is proceeding. We have not sought to enjoin the entirety of the grand jury, which was the position that Vice President Agnew tried to take in his case. We are simply saying criminal process issued to a sitting President in which they have not ruled out that he is a target of the investigation falls comfortably with the immunity that I think has to be accepted. So is this really about the tax records? May I? It is not, Your Honor. It is about this subpoena. The President has complied with a multitude of requests from both Federal and State officials. This is about, and I really do think, Your Honor, the other aspects of the subpoena really highlight the impropriety here. There is no argument based on what we've seen that 10 years of statements of financial condition are relevant. If I could just make, under my time, if I could make one last point, Your Honor, about the U.S. Government's position and Nixon. Two points. One, Clinton v. Jones answers the question about whether the President is in his personal capacity, is official. He was represented in that case in a civil lawsuit based on unofficial conduct that occurred before office by private attorneys. The Supreme Court said he can raise his immunity doctrines in that posture. He did not prevail in that case. But he wasn't defeated by the nature in which he proceeded to the court. Second, the Department of Justice has said, and I think their brief is clear on this, they are saying you can avoid the difficult constitutional question that our primary argument raises by adopting the U.S. v. Nixon position, as Your Honor said might be applicable here, imposing the heightened standard it requires given the sensitivity of the office. That standard applies beyond privilege, as the Cheney decision, I think, helpfully makes clear. And if you measure, and this will be my final point, take this subpoena, the fact that it's copied from a congressional subpoena, and its breadth and scope, apply Nixon, just put it into U.S. v. Nixon, and apply that standard, I think it is impossible to sustain this subpoena. If the court thinks further proceedings are warranted on that basis, we don't think it is. It could remand to the district court for in-camera review and to make an additional subpoena meets the heightened burden requirement in the particulars. And if the court were to do that, we would ask that the status quo be maintained because we heard today, when pressed, it is pretty clear that there is no promise here that these records are going to remain sealed forever. And that is all that is required to meet irreparable injury, even putting aside the immunity questions themselves. Thank you, Your Honor. Thank you both for your excellent arguments. Our panel is committed to proceeding deliberately and deliberatively. We have the feeling that you may be seeing each other again in Washington. Thank you for your argument. We will take a ten-minute recess.